BURNS, and others, Plaintiffs-Appellants, v. CITY OF MADISON, and another, Defendants-Respondents: GENERAL INVESTMENT SERVICES, INC., and another, Intervening Defendants.

Supreme Court

*No. 76–663. Submitted on briefs October 10, 1979.—Decided November 6, 1979.*
(Also reported in 284 N.W.2d 631.)

For the appellants the cause was submitted on the brief of *Law Offices of Howard Goldberg, S.C.,* of Madison.

For the respondents the cause was submitted on the brief of *Henry A. Gempeler,* city attorney, and *James M. Voss,* assistant city attorney.

For the intervening defendants the cause was submitted on the brief of *William F. Mundt, Fred Gants* and *Murphy, Stolper, Brewster & Desmond, S.C.* all of Madison.

CONNOR T. HANSEN, J.   The principal issue in this case arises out of the fact that the exterior boundary of the plat of Heritage Downs Subdivision included a replat of "Outlot A" of the Third Addition to Midvale Heights. "Outlot A" is a strip of land 18 inches wide and 430 feet in length.

It appears that the Madison city ordinances do not require a public hearing prior to the approval of a subdivision plat, while the ordinances do require a public hearing for a proposed replat of a recorded subdivision.

The record reveals the following facts. On November 24, 1975, the owner and/or developer of the subdivision known as Heritage Downs Subdivision submitted a preliminary plat of the subdivision to the Madison Plan Commission for approval. On November 24, 1975, the preliminary plat was approved by the Plan Commission without a public hearing. On November 25, 1975, the preliminary plat was approved by the common council of the City of Madison. On or about April 12, 1976, the final plat of the subdivision was approved by the Plan Commission, and on April 13, 1976, the final plat was approved by the common council, subject to the developer complying with certain conditions. On May 13, 1976, the plat was recorded in the office of the Register of Deeds for Dane county.

After the plat was recorded, the appellants discovered that the plat of Heritage Downs included a replat of "Outlot A" of the Third Addition to Midvale Heights. The appellants informed the Madison Plan Commission that the preliminary plat and final plat of Heritage Downs were adopted contrary to the procedures set forth in sec. 16.23 of the Madison municipal ordinances which require notice and public hearing before a replat can be approved.

A series of meetings was held between various representatives of the City of Madison and the petitioners, and the city attorney ultimately advised the Plan Commission that building permits for lots in Heritage Downs could not validly be withheld. The Building Inspection Superintendent then issued two building permits for lots in the subdivision. The petitioners demanded that he rescind the permits and issue no additional permits. The Building

Inspection Superintendent refused to comply with these demands and the appellants then petitioned for an alternative writ of mandamus.

Appellants allege in their petition for an alternative writ of mandamus that the duty of the Building Inspection Superintendent set forth in sec. 16.23 (3) (c) of the Madison general ordinances is absolute and not discretionary and the withholding of building permits is a ministerial act or duty. They also allege:

". . . That the continued delay in this matter will result in needless damages if development is to proceed due to the fact that the Building Inspection Superintendent has violated the clear duty set forth, as above stated, in the Madison Municipal Ordinances."

Attached to the petition are the affidavits of certain of the petitioners which set forth the following facts. The petitioners reside in the immediate neighborhood of the Heritage Downs Subdivision. It recently came to their attention that the Heritage Downs Subdivision plat was recorded on or about May 13, 1976. Prior to May 13, 1976, the plat was submitted to the City of Madison for approval, but petitioners were never advised by the city that the plat was being submitted for approval, nor advised of any public hearing to be held regarding such approval, nor were any legal notices published in the newspapers in the city advising of any public hearing regarding the plat. If petitioners had been advised of a public hearing and had a public hearing been held, they would have made every effort to attend the hearing. Had petitioners been able to attend a public hearing, they would have been interested and concerned as to the layout of the plat, the location of public sidewalks, the location of streets, the nature of traffic patterns, the location of snow storage easements, the location of public sign easements, the layout of lots, and the naming of streets. Upon

learning of the approval of the plat, petitioners were discouraged and dismayed to discover that the creation of two cul-de-sacs had seriously affected traffic patterns in the area, that the naming of two non-connecting streets in the plat with the same name will cause a great deal of confusion in the area, and that there had been no planning with regard to the saving of existing trees and topography regarding drainage and the placement of public sidewalks. Had a public hearing been held, many of these concerns would have been made known by petitioners to the Madison Plan Commission and the Madison city council.

During the proceedings in circuit court a stipulation of facts was filed by the parties. The following facts which did not appear in the petition, appear in the stipulation. The plat for the Heritage Downs Subdivision consisted of approximately 230,250 square feet of land, roughly 430 square feet of which were part of a previously recorded plat denoted the "Third Addition to Midvale Heights." The preliminary plat of the Heritage Downs Subdivision proposed that this 430 square feet be incorporated into the Heritage Downs plat. This fact was clearly indicated on the preliminary plat as submitted. The land to be transferred from one plat to the other consisted of an 18 inch wide strip, 430 feet in length, denominated as "Outlot A," and extending across the back side of several lots in the Heritage Downs plat. When the Third Addition to Midvale Heights was platted, "Outlot A" was created for the purpose of preventing the extension of three streets which formed dead-end "U" streets. When it no longer appeared necessary or desirable to protect against the extension of the "U" streets, the titleholder deeded the 18 inch strip to the abutting lots. The deed contained a reversionary clause, that should such land ever be used for street purposes, the property would revert to the grantor. The grantees thereafter conveyed

title to "Outlot A" to the platters of the Heritage Downs Subdivision. Seven of the petitioners live within the Third Addition to Midvale Heights or within two hundred feet of "Outlot A."[1] Petitioners were requesting the court for permission to amend the pleadings to show damage to residents who were suffering from adverse traffic conditions, adverse volume of traffic, and whose property and the lives of the children would be best suited by having a through street instead of two cul-de-sacs, all of which would have been developed in a public hearing had it been held, and alleged that the elimination of the cul-de-sacs might improve property values.

The issues presented on appeal are:

1. Whether sec. 16.23 (3) (c) of the Madison general ordinances requires the denial of building permits when a preliminary plat of a replat is approved without a public hearing?

2. Whether the petition for alternative writ of mandamus alleges facts sufficient to support the issuance of a writ?

Appellants basically allege in their petition that in November, 1975, the preliminary plat of the Heritage Downs Subdivision was approved by the Madison Plan Commission without a public hearing and was approved by the Madison common council. The final plat of that subdivision was later approved by the Plan Commission and common council, and recorded. A portion of the exterior boundary of the Heritage Downs Subdivision plat called "Outlot A," was formerly a portion of the exterior boundary of the Third Addition to Midvale Heights subdivision, which was a previously recorded plat, and therefore a public hearing was required before the Heritage Downs plat could be approved and recorded. Since there was no public hearing, the appellants argue the trial

[1] Thirty-two persons petitioned the circuit court for the alternative writ of mandamus.

court abused its discretion in quashing the petition for the writ.

A motion to quash a writ of mandamus is deemed a demurrer to a complaint. *State ex rel. Dalton v. Mundy*, 80 Wis.2d 190, 194, 257 N.W.2d 877 (1977) ; *State ex rel. Farley v. Board of School Directors*, 49 Wis.2d 765, 769, 183 N.W.2d 148 (1971). The issue on review of the granting of a motion to quash a writ of mandamus is whether the facts alleged in the petition state a cause of action. *Watkins v. Milwaukee County Civil Service Comm.*, 88 Wis.2d 411, 419, 276 N.W.2d 775 (1979) ; *State ex rel. Dalton v. Mundy, supra,* at 194, 195. The facts as pleaded are, for the purposes of the motion, considered to be true and the petition must be liberally construed. *State ex rel. Farley v. Board of School Directors, supra,* at 769.

A writ of mandamus is a discretionary writ and the order of the trial court will not be reversed except for an abuse of discretion. *Milwaukee County v. Schmidt*, 52 Wis.2d 58, 65, 187 N.W.2d 777 (1971) ; *Menzl v. Milwaukee*, 32 Wis.2d 266, 275, 145 N.W.2d 198 (1966).

A writ of mandamus will lie to compel a public officer to perform his prescribed duties. *Morrissette v. De Zonia*, 63 Wis.2d 429, 437, 217 N.W.2d 377 (1974) ; *State ex rel. Kurkierewicz v. Cannon*, 42 Wis.2d 368, 376, 166 N.W.2d 255 (1969). The duty of a public officer to act must be clear and unequivocal and the responsibility to act must be imperative. *Id.* at 377, 378. And it is an abuse of discretion for a court to compel action through mandamus when the duty is not clear and unequivocal and requires the exercise of discretion. *Morrissette v. De Zonia, supra,* at 437; *Menzl v. Milwaukee, supra,* at 276.

Sec. 16.23 (5) (b) 5 of the Madison general ordinances requires a public hearing before approval of the prelimi-

nary plat of a replat. Sec. 16.23 (3) (c) provides that building permits shall be refused for construction on sites created in violation of the ordinances.

Sec. 16.23 (3) (a) 1 of the Madison general ordinances states:

"(3) **General Requirements.**
"(a) *Subdivisions.*
"1. No person, firm or corporation shall divide any land located within the corporate limits of the City of Madison or within the extraterritorial plat approval jurisdiction thereof which shall result in a subdivision as defined herein without complying with the provisions of Chapter 236, Wis. Stats. and the requirements of this ordinance."

One of the "requirements of this ordinance" is stated in sec. 16.23 (5) (b) 5:

"Whenever it is proposed to replat a recorded subdivision or subdivisions, or any part of a recorded subdivision or subdivisions, the Plan Commission shall hold a public hearing on the proposed preliminary plat of the replat before taking action. When a preliminary plat of a replat is filed with the secretary of the Plan Commission, the secretary shall schedule a public hearing before the Plan Commission. The secretary shall mail notices of the proposed replat and of the scheduled hearing thereon at least ten (10) days prior to the time of such hearing to the owners of all properties situated within the limits of the exterior boundaries of the proposed replat, and to the owners of all properties within a radius of two hundred (200) feet of the exterior boundaries of the proposed replat."

And sec. 16.23 (3) (c) provides:

"**Remedies.** Failure to comply with the requirements of this section shall invalidate purported transfers of titles at the option of the purchaser in accordance with provisions of Sec. 236.31 (3) Wis. Stats. Building permits shall also be refused for construction on sites created in violation of these requirements."

One of the general requirements in sec. 16.23(3) is a prohibition against dividing land into subdivisions without complying with ch. 236, Stats., and "the requirements of this ordinance," which would include the preliminary replat procedure set forth in subsection (5) of sec. 16.23.

Under these ordinances we believe the duty of the Building Inspection Superintendent, as set forth in sec. 16.23(3)(c), is of a mandatory, ministerial, nondiscretionary nature. That section provides that building permits shall be refused for construction sites created in violation of the requirement that no land be divided into subdivisions without complying with the ordinance. And the ordinance requires a public hearing to be held before any preliminary plat of a replat can be approved.

The inclusion of "Outlot A" in the Heritage Downs Subdivision constituted a replat of "Outlot A." "Replat" is defined in sec. 236.02(13), Stats., as:

". . . the process of changing, or the map or plat which changes, the boundaries of a recorded subdivision plat or part thereof. The legal dividing of a large block, lot or outlot within a recorded subdivision plat without changing exterior boundaries of said block, lot or outlot is not a replat."

"Outlot A" was formerly a portion of the exterior boundary of the Third Addition to Midvale Heights, which was a previously recorded plat. Through the action of the Plan Commission and city council which is in dispute, "Outlot A" was made a portion of the exterior boundary of the Heritage Downs Subdivision. This change constituted a replat.

The respondents and intervening defendants seem to place considerable reliance on *State ex rel. James L. Callan, Inc. v. Barg,* 3 Wis.2d 488, 89 N.W.2d 267 (1958) and *State ex rel. Lozoff v. Board of Trustees of the Village of Hartland,* 55 Wis.2d 64, 197 N.W.2d 798 (1972),

and in doing so contend that the appellants cannot raise objections to the procedure after the plat is finally approved and recorded.

However, we do not consider that the holdings in *Callan* and *Lozoff* are applicable to the present case. The basis for the holding in each of those cases was a statute requiring the approving authority to approve or reject a plat within a certain period of time after submission of the plat, and providing that failure of the approving authority to act within that time constituted approval of the plat. In each case the approving authority failed to act within the required time period. After the time period had expired and after an action had been commenced seeking approval of the plat, the approving authority in each case objected to the approval of the plat. The court in each case held that if the approving authority wished to reject the plat, it should have done so within the time set by statute, and its failure to do so constituted approval of the plat; the approving authority could not come into court after the statutory time limit had expired and attempt to reject the plat.

No statute providing for constructive approval of a plat upon a failure of the approving authority to reject the plat within a certain time period is involved in the instant case. Here it is not the approving authority who is objecting to the plat, but individuals residing in the immediate neighborhood of the platted subdivision. These individuals are not contending that the plat was constructively approved because the city failed to reject it, but are contending that the plat was approved in violation of the city ordinances.

Nevertheless, even though sec. 16.23 (3) provides that building permits shall be refused for construction on sites created in violation of the general ordinances, one of the criteria for the issuance of a writ of mandamus is an allegation that the petitioners will be substantially damaged.

In *State ex rel. Johnson v. County Court,* 41 Wis.2d 188, 192, 163 N.W.2d 6 (1968), this court stated the following requirements for the issuance of a writ, *quoting Neu v. Voege,* 96 Wis. 489, 493, 71 N.W. 880 (1897):

" '. . . a clear legal right; the duty sought to be enforced is positive and plain; *the applicant for the writ shows that he will be substantially damaged by nonperformance of such duty;* and there is no other adequate specific legal remedy for the threatened injury, and no laches on the part of such applicant, and no special reasons exist rendering a resort on his part to the remedy, under the circumstances, inequitable. . . .' " (Emphasis supplied.)

In *State ex rel. Cabott, Inc. v. Wojcik,* 47 Wis.2d 759, 762, 763, 177 N.W.2d 828 (1970), this court set forth the same requirements. In that case the petitioners, landowners in a subdivision, alleged that subsequent to the approval of the plat, portions of the town roads leading to the subdivision had washed away, had become impassable, and had been closed by the town, all of which caused their lots to depreciate in value. This court reversed the trial court's judgment quashing the writ of mandamus, on the basis that the petition

". . . asserts a clear legal right [under secs. 81.01 and 81.03, Stats., concerning the duty to keep roads passable], that the duty sought to be enforced is positive and plain and that the petitioners will be substantially damaged by the nonperformance of such duty." *Id.* at 763.

Although this court did not specifically define "substantial damages" in *State ex rel. Cabott v. Wojcik, supra; State ex rel. Johnson v. County Court, supra;* or *Neu v. Voege, supra,* some indication of what kind of damages are considered to be substantial appears in *Cabott. Jost v. Dairyland Power Cooperative,* 45 Wis.2d 164, 172 N.W.2d 647 (1969), was a case involving a nuisance claim. We believe the definition of substantial damage

stated therein is relevant in this case. There this court accepted the instruction of the trial court defining substantial damage as:

" '. . . a sum, assessed by way of damages, which is worth having; opposed to nominal damages, which are assessed to satisfy a bare legal right. Substantial damages are damages which are considerable in amount and intended as a real compensation for a real injury.' " *Id.* at 171.

We are of the opinion the petitioners-appellants have not shown they will be substantially damaged, and therefore the petition is insufficient to support the issuance of a writ of mandamus.

Appellants allege in their petition that

". . . the continued delay in this matter will result in needless damages if development is to proceed due to the fact that the Building Inspection Superintendent has violated the clear duty set forth, as above stated, in the Madison Municipal Ordinances."

This bare allegation of "needless damages" fails to state either the nature or extent of appellants' damages. And appellants' supporting affidavits fail to correct the error. Those affidavits merely state

"That due to the fact that a public hearing was not scheduled on this matter, I believe that my personal rights given to me by law and specifically, the Madison General Ordinances, have been violated all to my great damage and dismay."

In addition, appellants stipulated that property damage was not alleged.

It is well established that one seeking a writ of mandamus must allege that he will be substantially damaged by the nonperformance of the *duty sought to be enforced.*

*State ex rel. Cabott, Inc. v. Wojcik, supra,* at 763; *State. ex rel. Johnson v. County Court, supra,* at 192. The basis of this action is the failure to hold a public hearing before approval of the preliminary plat of the replat of "Outlot A." However, the principal complaints of the appellants are directed to the basic Heritage Downs plat, not to the replat of "Outlot A." In their affidavits they state that the creation of two cul-de-sacs in Heritage Downs has seriously affected traffic patterns in the area, that the naming of two non-connecting streets in the plat with the same name will cause a great deal of confusion in the area, and that there was no planning with regard to the saving of existing trees and topography regarding drainage and the placement of public sidewalks. In their stipulation appellants state that some of them were suffering from adverse traffic conditions and adverse volume of traffic, and that elimination of the cul-de-sacs might improve property values. These damages do not result from the replat of "Outlot A," but from the platting of the larger area of the Heritage Downs Subdivision which was previously unplatted. "Outlot A" is a strip of land only 18 inches wide and 430 feet in length, and a public hearing on the replat of "Outlot A" would have been limited to concerns regarding the transfer of this land from the Third Addition to Midvale Heights to the Heritage Downs Subdivision. The items of damages asserted by appellants would have no bearing at a public hearing on the replat, and therefore, they are not relevant to the present case.

Appellants have failed to allege substantial damages arising from the failure to hold a public hearing on the replat of "Outlot A." Although the city ordinances provide that a public hearing should have been held in this

,case, mandamus will not be granted where the petition has shown a completely naked legal right.

Appellants' contention that the trial court considered improper facts in making its ruling is not relevant since the issue in this case is whether the facts alleged in the petition and stipulation are sufficient to support the issuance of a writ of mandamus. We conclude they are not and affirm the order of the trial court.

*By the Court.*—Order affirmed.