**2025 WI 2**

# Supreme Court of Wisconsin



WISCONSIN VOTER ALLIANCE, et al.,
*Petitioners-Appellants,*

*v.*

KRISTINA SECORD,
*Respondent-Respondent-Petitioner.*

No. 2023AP36

Decided January 17, 2025

REVIEW of a decision of the Court of Appeals
Walworth County Circuit Court (David W. Paulson, J.)
No. 2022CV443

PROTASIEWICZ, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, HAGEDORN, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a concurring opinion. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion, in which ZIEGLER, C.J., joined.

¶1    JANET C. PROTASIEWICZ, J. The Wisconsin Voter Alliance[1] filed identical petitions for writ of mandamus against the registers in probate for 13 circuit courts around Wisconsin demanding access to Notice of Voting Eligibility forms ("NVE forms") under Wisconsin's public records

---

[1] Petitioners Wisconsin Voter Alliance and its president, Ron Heuer, are collectively referred to as "the Alliance."

law.[2] *See* WIS. STAT. §§ 19.31 to 19.37 (2021–22).[3] In the first case to reach the court of appeals, District IV issued a unanimous, published opinion holding that public records law and WIS. STAT. § 54.75 exempt NVE forms from disclosure, so the Alliance is not entitled to them. *Wisconsin Voter Alliance v. Reynolds*, 2023 WI App 66, 410 Wis. 2d 335, 1 N.W.3d 748. Shortly after, District II issued a split opinion in this case. The majority reached the opposite conclusion, holding that public records law and § 54.75 do not exempt NVE forms from disclosure, so the Alliance is entitled to them with possible redactions.

¶2 Secord asks this court to review two issues. First, was District II bound by *Reynolds*? Second, are NVE forms subject to public disclosure?

¶3 While this appeal raises an important issue regarding public records law, we do not reach it due to District II's patent violation of *Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997). Instead, we hold that District II was bound by *Reynolds*. When the court of appeals disagrees with a prior published court of appeals opinion, it has two and only two options. It may certify the appeal to this court and explain why it believes the prior opinion is wrong. Or it may decide the appeal, adhering to the prior opinion, and explain why it believes the prior opinion is wrong. *Id.* at 190.

---

[2] *See Wisconsin Voter Alliance v. Secord*, Walworth County Circuit Court Case No. 2022CV443; *Wisconsin Voter Alliance v. Reynolds*, Juneau County Circuit Court Case No. 2022CV128; *Wisconsin Voter Alliance v. Young*, Brown County Circuit Court Case No. 2022CV882; *Wisconsin Voter Alliance v. Redman*, Crawford County Circuit Court Case No. 2022CV46; *Wisconsin Voter Alliance v. Sheffler*, Kenosha County Circuit Court Case No. 2022CV771; *Wisconsin Voter Alliance v. Siegenthaler*, Lafayette County Circuit Court Case No. 2022CV59; *Wisconsin Voter Alliance v. Mayr*, Langlade County Circuit Court Case No. 2022CV86; *Wisconsin Voter Alliance v. Goodwin*, Marquette County Circuit Court Case No. 2022CV47; *Wisconsin Voter Alliance v. Mueller*, Ozaukee County Circuit Court Case No. 2022CV256; *Wisconsin Voter Alliance v. Anderson*, Polk County Circuit Court Case No. 2022CV199; *Wisconsin Voter Alliance v. Campbell*, Taylor County Circuit Court Case No. 2022CV53; *Wisconsin Voter Alliance v. Halverson*, Vilas County Circuit Court Case No. 2022CV66; *Wisconsin Voter Alliance v. Peterson*, Vernon County Circuit Court Case No. 2022CV82.

[3] All subsequent references to the Wisconsin Statutes are to the 2021–22 version unless otherwise indicated.

District II violated *Cook*'s directions. Therefore, we reverse and remand this case to the court of appeals with instructions to follow *Cook*.[4]

## I. BACKGROUND

¶4      This appeal concerns the petition for writ of mandamus that the Alliance filed against Kristina Secord, the register in probate for the Walworth County Circuit Court. The petition asserts that when a court finds an individual incompetent to vote, the clerk of court completes an NVE form indicating the individual's name, address, finding of incompetency to vote, and other personal information. The clerk sends the completed NVE form to the Wisconsin Elections Commission ("WEC"), which maintains a public database of registered voters in Wisconsin called WisVote. According to the Alliance, WEC is required to identify individuals who are ineligible to vote due to incompetency on WisVote, in order to prevent them from registering to vote and voting in elections.

¶5      The Alliance sought access to NVE forms that Secord "sent to the Wisconsin Elections Commission anytime." At a minimum, the Alliance wanted the names and addresses of the individuals declared incompetent to vote. Citing public records law, the Alliance claimed that it needed this information in order to prove WEC was not always updating WisVote to show individuals found incompetent to vote in Wisconsin elections.

¶6      Secord moved to dismiss the Alliance's petition for writ of mandamus for failure to state a claim upon which relief may be granted. Secord argued that WIS. STAT. § 54.75 exempts NVE forms from disclosure under public records law. Therefore, the Alliance was not entitled to a writ of mandamus compelling disclosure of the NVE forms.

¶7      The circuit court agreed with Secord and dismissed the Alliance's petition for failure to state a claim. The Alliance appealed to the court of appeals, District II.

¶8      By this point, the Juneau County Circuit Court had already dismissed an identical petition for writ of mandamus that the Alliance had filed against Terry Reynolds, the Juneau County register in probate. The

---

[4] The dissent does not dispute that District II should be reversed for violating *Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997).

Alliance had appealed to the court of appeals, District IV. In *Reynolds*, District IV held that the Alliance was not entitled to the NVE forms under public records law and § 54.75 and affirmed the Juneau County Circuit Court's dismissal of the Alliance's petition. The Alliance did not petition this court for review of *Reynolds*.

¶9      A few weeks later, in this case, District II held that the Alliance was entitled to the NVE forms under public records law and § 54.75, possibly with redaction. District II reversed the Walworth County Circuit Court's dismissal of the Alliance's petition for failure to state a claim. Secord filed a petition for review, which we granted.

## II.  ANALYSIS

¶10     To provide context for the legal issue we resolve, we begin with a summary of the guardianship and public records statutes at issue. Next we highlight the salient portions of District IV's opinion in *Reynolds* and District II's opinion in this case. Then we apply *Cook*.

### A.  SUMMARY OF LAW

¶11     Chapter 54 of the Wisconsin Statues governs guardianships. It provides two ways for a circuit court to remove an individual's right to vote. If the circuit court conducts a WIS. STAT. § 54.44 hearing and determines that an individual is incompetent and in need of a guardian, the circuit court may make a specific, additional finding that "the individual is incapable of understanding the objective of the elective process" and lacks the capacity "to register to vote or to vote in an election." WIS. STAT. § 54.25(2)(c)1.g. Alternatively, the circuit court may make this specific finding in response to a petition for declaration of incompetence to vote. § 54.25(2)(c)1.g., (2)(c)4. Either way, the circuit court clerk must communicate this finding in writing "to the election official or agency charged under s. 6.48, 6.92, 6.925, 6.93, or 7.52(5) with the responsibility for determining challenges to registration and voting that may be directed against that elector." § 54.25(2)(c)1.g., (2)(c)4.

¶12     The circuit court documents its finding regarding an individual's competency to vote on an NVE form, also known as circuit court Form GN-3180. An NVE form contains the following information: the guardianship case number; the individual's name, address, and date of birth; the circuit court's determination that either the individual is not

4

competent to register to vote or to vote in an election or that those rights have been restored to the individual; and the date of the determination.

¶13  Wisconsin law presumes access to government records. "[I]t is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." WIS. STAT. § 19.31. "To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business." *Id*.

¶14  The presumption of public access is not absolute. Access will be denied where there is a statutory, common law, or public policy exception to disclosure. *Watton v. Hegerty*, 2008 WI 74, ¶10, 311 Wis. 2d 52, 751 N.W.2d 369 (citing WIS. STAT. § 19.36). "If a statutory or common law exception applies, the analysis ends and the records will not be disclosed." *Democratic Party of Wisconsin v. DOJ*, 2016 WI 100, ¶11, 372 Wis. 2d 460, 888 N.W.2d 584. If neither applies, the custodian performs a public policy balancing test "to determine whether the public interest in nondisclosure outweighs the public interest in favor of disclosure." *Id*.

¶15  Section 54.75 is a statutory exception to public disclosure. It provides:

> All court records pertinent to the finding of incompetency are closed but subject to access as provided in s. 51.30 or 55.22 or under an order of a court under this chapter. The fact that an individual has been found incompetent and the name of and contact information for the guardian is accessible to any person who demonstrates to the custodian of the records a need for that information.

WIS. STAT. § 54.75.

¶16  The parties agree that NVE forms are "court records." They dispute whether NVE forms are "pertinent to the finding of incompetency" under the first sentence of § 54.75.[5] They also dispute whether the Alliance is entitled to the NVE forms under the second sentence of § 54.75, which

---

[5] The Alliance does not claim access under WIS. STAT. § 51.30 or § 55.22.

authorizes disclosure of limited information to a person who demonstrates a "need" for it.

### B. THE DISTRICT IV AND DISTRICT II OPINIONS

¶17 In *Reynolds*, the Alliance's initial brief presented this issue to District IV: "Whether [an NVE form] used to communicate to election officials or an agency the circuit court's determination of a person's competency to register to vote or to reinstate the right to vote is subject to disclosure under the Public Records Act."

¶18 In a unanimous, published opinion, District IV held that NVE forms are exempt from disclosure under the first sentence of § 54.75 because they are court records "pertinent to the finding of incompetency." *Reynolds*, 410 Wis. 2d 335, ¶34. They are created during proceedings where a court determines incompetency for purposes of establishing a guardianship, and they contain information drawn directly from this proceeding. *Id.*, ¶¶28–29.

¶19 According to District IV, it is immaterial that NVE forms are created after, and are not part of the underlying basis for, the circuit court finding of incompetency. Many court records documenting a court's incompetency finding—such as written opinions and transcripts—are created after the court makes its decision, but they are still confidential. *Id.*, ¶26.

¶20 District IV rejected the Alliance's argument that WEC's use of NVE forms overrides § 54.75's confidentiality requirement because the Alliance failed to cite any supporting law. *Id.*, ¶32.

¶21 Construing the second sentence of § 54.75, District IV held that a person who demonstrates a "need" may access two pieces of information: (1) the fact that an individual has been found incompetent, and (2) the contact information for the individual's guardian. But the Alliance seeks NVE forms—information beyond the scope of this exception. *Id.*, ¶33.

¶22 Because § 54.75 exempts NVE forms from disclosure, District IV found it unnecessary to balance the public's interest in disclosure of the records against the public's interest in nondisclosure. *Id.*, ¶34 n.10.

¶23 District IV concluded that NVE forms are "pertinent to the finding of incompetency" and thus barred from disclosure under § 54.75. It affirmed the circuit court's dismissal of the Alliance's petition because the

Alliance failed to satisfy the first two requirements for a writ of mandamus: (1) it has a clear legal right to the NVE forms, and (2) Reynolds has a plain duty to disclose them. *Id.*, ¶34.

¶24     We turn to District II's opinion in this appeal. The Alliance's initial brief in the court of appeals presented the identical issue as in *Reynolds.* But District II issued a split opinion, including a majority, a concurrence, and a dissent. *Wisconsin Voter Alliance v. Secord*, No. 2023AP36, unpublished slip op. (Wis. Ct. App. Dec. 27, 2023).

¶25     The majority opinion acknowledged that it was bound by *Reynold*s "to the extent it is not distinguishable." *Id.*, ¶3. Then it distinguished *Reynolds*. The majority noted that in *Reynolds* the circuit court granted the motion to dismiss the Alliance's petition for writ of mandamus without waiting for a response or full briefing. *Id.*, ¶3 n.2. This prevented the Alliance from clarifying its records request and defending its position. By contrast, in this case the circuit court had the benefit of full briefing and argument. *Id.*, ¶6 n.6. The majority also reasoned that while the Alliance seeks "the *very same records*" in both cases, "that is neither dispositive nor a basis upon which to avoid ruling on an issue previously not decided. The question is whether the issues vary. And they do." *Id.*, ¶3 n.4.

¶26     The majority opinion did not address whether NVE forms are "pertinent to the finding of incompetency" under the first sentence of § 54.75. It reserved that analysis for the concurring opinion. Instead, the majority opinion began by performing a public policy balancing test and found that the policy of protecting an incompetent person's dignity and privacy "is expressly outweighed by the legislature's mandate that voting ineligibility determinations are to be publicly communicated to the local officials or agencies through WEC (as directed by the Court System) and the public in general." *Id.*, ¶28.

¶27     The majority opinion stated that WEC publishes information from NVE forms "to the world by including that data on WisVote. Given the *public* status of [NVE forms], it is unreasonable for Secord to assert that [they] are 'closed' public records that may never be released to the public." *Id.*, ¶29.[6]

---

[6] We note that the circuit court dismissed the Alliance's petition for failure to state a claim under public records law. The circuit court did not conduct an

¶28    Applying the second sentence of § 54.75, the majority opinion held that the Alliance is entitled to the NVE forms because it demonstrated a "need." It needs the NVE forms to ensure that WEC maintains accurate lists of registered voters. *Id.*, ¶¶35–36.

¶29    The majority opinion concluded that the Alliance satisfied all the requirements for a writ of mandamus. *Id.*, ¶40. It reversed the circuit court's decision dismissing the Alliance's petition and directed the release of the NVE forms "in an appropriately redacted form." *Id.*, ¶41.[7]

¶30    The two judges in the majority also filed a concurring opinion. The concurrence construed the first sentence of § 54.75 and declared: "[W]e disagree with the analysis in [*Reynolds*] with respect to the definition of the phrase 'pertinent to the finding of incompetency.'" *Id.*, ¶42 (Lazar, J., concurring). The concurrence reasoned that circuit court records and forms "leading up to" the finding of incompetency are "pertinent" to the finding of incompetency. *Id.* ¶¶52, 56–61. But the determination that an individual is ineligible to vote does not "lead up" to the finding of incompetency. It is a "consequence" of that finding. *Id.*, ¶¶42, 48, 61, 65. Therefore, NVE forms are not pertinent to the finding of incompetency. *Id.*, ¶68.

## C.   APPLICATION OF *Cook*

¶31    As an initial matter, we find the District II majority's attempt to distinguish *Reynolds* unpersuasive. In both cases, the Alliance filed identical petitions for writ of mandamus demanding access to NVE forms. In both cases, the registers in probate moved to dismiss the Alliance's petitions for failure to state claim upon which relief could be granted. In both cases, the circuit courts dismissed the Alliance's petition because NVE forms are confidential under § 54.75. The Alliance appealed both decisions.

evidentiary hearing or make any factual finding that WEC published information from NVE forms to the world or on a publicly accessible database.

[7] We are unsure of the majority opinion's intended holding. At the outset the majority holds that the Alliance is entitled to NVE forms "*in full* or redacted form," but at the end it specifically requires redaction of the guardianship case number and the individual's birth date. *Wisconsin Voter Alliance v. Secord*, 2023AP36, unpublished slip op., ¶¶4, 41 n.23 (Wis. Ct. App. Dec. 27, 2023) (emphasis added).

In both appeals, the Alliance sought "the very same" records and presented—verbatim—the same issue of law. In both appeals, the register in probate argued that NVE forms are exempt from disclosure under § 54.75. On the facts and the dispositive legal issue, the two appeals are virtually indistinguishable. District II simply disagreed with *Reynolds*.

¶32    *Cook* instructs the court of appeals how to proceed when it disagrees with one of its prior published opinions. We explained that while the court of appeals is comprised of four districts that sit in different parts of the state, it is a unitary court, not four separate courts. *Cook*, 208 Wis. 2d at 186 (citing WIS. CONST. ART. VII, § 5). Officially published opinions of the court of appeals are precedential and have statewide effect. *Id*. (citing WIS. STAT. § 752.41(2) (1995-96); WIS. STAT. (RULE) § 809.23 (1995-96)). Therefore, only the supreme court may overrule, modify, or withdraw language from a published court of appeals opinion. *Id*. at 189-90.

¶33    We held that the court of appeals "must speak with a unified voice." *Id*. at 189. If it could overrule, modify, or withdraw language from its prior published opinions "its unified voice would become fractured, threatening the principles of predictability, certainty and finality relied upon by litigants, counsel and the circuit courts." *Id*. This might encourage litigants "to litigate issues multiple times in the four districts." *Id*.

¶34    We understand that the court of appeals will sometimes disagree with one of its prior published opinions. In this situation, the court of appeals has two—and only two—options.

> It may signal its disfavor to litigants, lawyers and this court by certifying the appeal to this court, explaining that it believes a prior case was wrongly decided. Alternatively, the court of appeals may decide the appeal, adhering to a prior case but stating its belief that the prior case was wrongly decided.

*Id*. at 190.

¶35    We note that the court of appeals has followed this rule even when it vehemently disagrees with a prior, published decision—for example, when the decision "obliterates" a "statutory scheme" and replaces it with a "simple rule" without any legal support. *Maple Grove Country Club Inc. v. Maple Grove Ests. Sanitary Dist.*, 2019 WI 43, ¶23, 386 Wis. 2d 425, 926 N.W.2d 184 (quoting *Maple Grove Country Club Inc. v. Maple Grove Ests.*

*Sanitary Dist.*, No. 2016AP2296, unpublished slip op., ¶14 (Wis. Ct. App. Apr. 19, 2018) (per curiam) (adhering to prior decision while signaling disfavor)).

¶36 We have said that if the court of appeals identifies so much as a "perceived conflict" in case law, certifying the appeal and highlighting the concern best serves the public interest and assists this court in developing and clarifying the law. *State v. Johnson*, 2004 WI 94, ¶18, 273 Wis. 2d 626, 681 N.W.2d 901.

¶37 The District II majority unmistakably violated *Cook*'s instructions by rendering multiple holdings that directly conflict with *Reynolds*, including these:

- *Reynolds* held that because NVE forms are exempt from disclosure under § 54.75, the court does not perform a public policy balancing test. *Reynolds*, 410 Wis. 2d 335, ¶34 n.10. The District II majority performed a public policy balancing test and found that it weighed in favor of disclosing NVE forms. *Secord*, No. 2023AP36, ¶28.

- *Reynolds* rejected the argument that WEC's alleged use of NVE forms overrides their confidentiality under § 54.75. *Reynolds*, 410 Wis. 2d 335, ¶32. In its balancing test analysis, the District II majority stated that NVE forms are not confidential because WEC publishes information from them to the world. "Given the *public* status of the [NVE forms] it is unreasonable for Secord to assert that [they] are 'closed' public records that may never be released to the public." *Secord*, No. 2023AP36, ¶29.

- *Reynolds* concluded that even if the Alliance demonstrated a "need" under the second sentence of § 54.75, it is not entitled to the information on NVE forms. *Reynolds*, 410 Wis. 2d 335, ¶33. The District II majority held that the Alliance is entitled to NVE forms "in full or redacted form" because it demonstrated a "need" for them. *Secord*, No. 2023AP36, ¶¶35–36.

¶38 *Reynolds* and the District II majority sometimes stressed different points and offered different rationales, but their results are completely contrary. *Reynolds* held that the Alliance failed to satisfy all of the requirements for a writ of mandamus requiring the register in probate disclose NVE forms. *Reynolds*, 410 Wis. 2d 335, ¶24. Here, the District II majority reached the polar opposite conclusion. *Secord*, No. 2023AP36, ¶34.

¶39     We reject the District II majority's effort to skirt *Cook* by drawing fine distinctions between arguments and assuming additional or different facts.[8] If we were to ignore or approve what the District II majority did, we would gut *Cook*. Like the Alliance, future litigants would feel encouraged to litigate issues "multiple times in the four districts." *Cook*, 208 Wis. 2d at 189. Why not? Like the Alliance, if they lose in one district they might win in another.

¶40     We will not thwart the "principles of predictability, certainty and finality relied upon by litigants, counsel and the circuit courts." *Id*. We reverse the court of appeals and remand this case with instructions to follow *Cook*.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the court of appeals.

---

[8] *See Steiner v. Steiner*, 2004 WI App 169, ¶20, 276 Wis. 2d 290, 687 N.W.2d 740 (Dykman, J., dissenting) ("Faced with this inability to modify its published opinions, panels sometimes distinguished a problematic case on exceedingly fine points, or on assumed facts.").

BRIAN HAGEDORN, J. concurring.

¶41    The majority holds that the decision of the court of appeals below contravened a prior published decision of the court of appeals, and therefore violated *Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997). Indeed it did, and I join the court's opinion.[1] I write separately, however, to address two issues. First, I write to clarify the role of mandamus in public records cases. Both parties, and the court of appeals below, discuss the mandamus requirements in ways that are inconsistent with the law and likely to confuse matters further. Second, I write to discuss the reasoning of *Cook v. Cook*, and question whether the rules it announces rest on a solid legal foundation and are worth reexamination.

## I.  MANDAMUS

¶42    First, it is important to clarify the unique way mandamus applies in public records cases such as this. We have described the common law writ of mandamus as an extraordinary legal remedy that may issue only when a party can show: (1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law. *Law Enf't Standards Bd. v. Village of Lyndon Station*, 101 Wis. 2d 472, 494, 305 N.W.2d 89 (1981); *Lake Bluff Hous. Partners v. City of South Milwaukee*, 197 Wis. 2d 157, 170, 540 N.W.2d 189 (1995).

¶43    Both parties in this case and the court of appeals misunderstand how these requirements apply in public records cases, however. Secord suggests, for example, that WVA failed to meet the fourth requirement for mandamus because it could obtain the records another way—such as requesting a court order for the records under Chapter 54. The parties also debate whether the records should be released on the grounds that WVA failed to establish the third mandamus requirement—substantial damages. Secord appeals to the public goods and harms that could result from releasing or protecting the documents. WVA counters that it would not be able to carry out its investigatory purposes without the records, and is therefore harmed. And the court of appeals entertains these arguments and concludes the third mandamus requirement is met because voter integrity and public confidence in our elections support WVA's claim

---

[1] Although I join the court's decision, I would have preferred we answer whether the records are exempt from disclosure or not.

of substantial damages. *See Wis. Voter All. v. Secord*, No. 2023AP36, unpublished slip op., ¶32 (Wis. Ct. App. Dec. 27, 2023). This reasoning reflects a mistaken understanding of the law; a brief review of the history shows why.

¶44 Prior to the enactment of the modern public records law, mandamus was the vehicle used at common law to challenge a custodian's decision to withhold public records. *Beckon v. Emery*, 36 Wis. 2d 510, 518–19, 153 N.W.2d 501 (1967). The court's analysis in such cases focused on the reasons a custodian gave for denying access to records and whether they were legally sufficient. *Id.* That is, a reviewing court's inquiry was limited to whether the custodian correctly determined that the requester did not have a right to the record. *See Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979). In other types of mandamus cases, all four requirements were regularly analyzed; but this was not the methodology employed in public records cases.[2] It is fair to say, then, that Wisconsin courts utilized a streamlined common law mandamus approach in public records cases.

¶45 In 1981, the legislature enacted the modern public records law and codified mandamus as the proper vehicle for ordering the release of public records. *See* § 14, ch. 335, Laws of 1981. In the 43 years since and over scores of cases, Wisconsin courts have continued to concentrate their analysis on the simple question of whether the requester had a right to the records or not. This streamlined mandamus approach in public records cases remained unaltered while, at the same time, courts continued to analyze all four mandamus requirements in other types of cases.[3]

---

[2] *Compare Neu v. Voege*, 96 Wis. 489, 96 Wis. 2d 489 (1897), *and State ex rel. Cabbott, Inc. v. Wojcik*, 47 Wis. 2d 759, 177 N.W.2d 828 (1970), *and Burns v. City of Madison*, 92 Wis. 2d 232, 284 N.W.2d 631 (1979), *with State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 137 N.W.2d 470 (1965), *and Beckon v. Emery*, 36 Wis. 2d 510, 153 N.W.2d 501 (1967).

[3] *Compare Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay*, 116 Wis. 2d 388, 404, 342 N.W.2d 682 (1984), *and George v. Rec. Custodian*, 169 Wis. 2d 573, 578, 485 N.W.2d 460 (Ct. App. 1992), *and Wis. Newspress, Inc. v. Sch. Dist. of Sheboygan Falls*, 199 Wis. 2d 768, 778, 546 N.W.2d 143 (1996), *and Linzmeyer v. Forcey*, 2002 WI 84, ¶¶10–11, 254 Wis. 2d 306, 646 N.W.2d 811, *and Hempel v. City of Baraboo*, 2005 WI 120, ¶28, 284 Wis. 2d 162, 699 N.W.2d 551, *with Law Enf't Standards Bd. v. Village of Lyndon Station*, 101 Wis. 2d 472, 494, 305 N.W.2d 89 (1981), *and Lake Bluff Housing Partners v. City of South Milwaukee*, 197 Wis. 2d 157,

¶46    The approach to the mandamus requirements taken by the parties and the court of appeals in this case, however, is a historical outlier.[4] *See Secord*, No. 2023AP36, at ¶¶31–33. The consideration of alternative ways the records might be obtained and the weighing of a requester's particular need for the records runs contrary to the public records law and confuses how the traditional mandamus factors apply in public records disputes. Although our cases have not spelled it out as such, the reason the analysis is appropriately focused on whether a requester has a clear legal right to the records is because—given the text of the public records law—the last three mandamus requirements do not accomplish any analytical work.

¶47    Assuming the first requirement is met—that is, the requester has a right to the records—the custodian has no discretion to withhold records. WIS. STAT. § 19.35(1)(a) (providing broad rights to requesters to receive records from custodians); § 19.35(4)(a) (requiring that records be furnished on request "as soon as practicable"). As we have said, "where a request for a public record is made and no statutory exception exists, no limitations under common law exist, and no specifically stated sufficient reasons to the contrary are presented by the custodian, a writ of mandamus must issue compelling production of the requested public record." *Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay*, 116 Wis. 2d 388, 404, 342 N.W.2d 682 (1984). The custodian always has a positive and plain duty to

---

170, 540 N.W.2d 189 (1995), *and Pasko v. City of Milwaukee*, 2002 WI 33, ¶24, 252 Wis. 2d 1, 643 N.W.2d 72, *and Mount Horeb Cmnty. Alert v. Vill. Bd. of Mount Horeb*, 2003 WI 100, ¶9, 263 Wis. 2d 544, 665 N.W.2d 229.

[4] Although courts have sporadically cited all four mandamus requirements in public record cases, the analysis has extended beyond the first requirement only a handful of times. Two cases address both the clear legal right prong as well as whether the custodian had a plain duty. *State ex rel. Ardell*, 354 Wis. 2d 471, ¶14; *Alliance v. Reynolds*, 2023 WI App 66, ¶20 n.5, 410 Wis. 2d 335, 1 N.W.3d 748. In a third case, the court of appeals held that the record custodian did not have a plain duty to release the records, but it also commented on the third and fourth requirements. *State ex rel. Morke v. Record Custodian,* 154 Wis. 2d 727, 731-32, 454 N.W.2d 21 (1990). *Morke* appears to be the only case other than this one to address the third and fourth mandamus requirements.

release records that a requester is entitled to obtain, satisfying the second requirement.[5]

¶48     Under the third requirement, requesters denied access to records they are entitled to have always suffered the requisite harm. It has been the rule for at least 137 years that a requester's right to public records is not contingent upon its reasons or interest in those records. *See Hanson v. Eichstaedt*, 69 Wis. 538, 541, 35 N.W. 30 (1887); Linda de la Mora, *The Wisconsin Public Records Law*, 67 MARQ. L. REV. 65, 67–68 (1983). Nowhere does the public records law condition a requester's right to receive records on a particular showing of damages, nor does the statute countenance an inquiry into motives or the public good that may be served or harmed by release of records. Rather, the legislature has already told us that "the greatest possible" access to records "is declared to be the public policy of this state." WIS. STAT. § 19.31. And thus, the denial of the statutory right to records is harm enough. No balancing or consideration of a requester's need for the records is necessary—or permitted.

¶49     Finally, under the fourth mandamus requirement, the legislature has established that mandamus is always the correct enforcement mechanism in public records cases, codifying the common law approach. WIS. STAT. § 19.37(1). Parties need not explore other avenues to obtain the records first.

¶50     Accordingly, both the parties and the court of appeals in this case distort the unique way mandamus works in public records cases, leading to errors of law. Rather, our cases teach that the only inquiry that matters in public records mandamus actions is whether the requester has a legal right to the records. This step is where a court determines whether the documents are records at all, whether any statutory or common law exceptions apply, and whether the balancing test would preclude release. *See Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, ¶28, 403 Wis. 2d 1, 976 N.W.2d 263 (lead op.). All of this is appropriately part of whether a requester has a right to the records in the first place. If records

---

[5] Even a dispute over the timing of record production is probably best categorized as implicating the first requirement. For example, suppose a case centers on whether a custodian produced records in a timely manner. The question in that case would still seem to be whether the requester had or has a clear legal right to the records given the delay. If so, the custodian always has a positive and plain legal duty to furnish the records. *See* WIS. STAT. § 19.35(4)(a).

have wrongly been withheld, the custodian must turn them over to the harmed requester, and a writ of mandamus ordering the custodian to do so is the prescribed remedy.

## II. *COOK V. COOK*

¶51 The second issue concerns the basis for the decision in the majority opinion. In 1997, 20 years after the court of appeals was created, we considered "whether the court of appeals has the power to overrule, modify or withdraw language from a previously published decision of the court of appeals." *Cook,* 208 Wis. 2d at 185. We answered that it did not. But the reasoning offered was sparse, and rested predominantly on pragmatic and policy concerns. *Id.* at 188.

¶52 First, we explained that the court of appeals was designed primarily to correct circuit court errors, while the supreme court was intended to be the primary place for law definition and development. *Id.* at 188–89. Second, we reasoned that because the constitution says the court of appeals is a unitary court, "it must speak with a unified voice." *Id.* at 189. Allowing the court of appeals to overturn itself would lead to a "fractured" voice, "threatening the principles of predictability, certainty and finality," and encouraging parties to litigate the same issues multiple times in different districts. *Id*.

¶53 As to the first ground, it is true that this court has a primary role in clarifying the law in Wisconsin. And it is true that error correction is a primary role of the court of appeals. But throughout its history, the court of appeals has decided high profile cases of first impression.[6] And it was right to do so. Both the court of appeals and this court have an important role to play in clarifying the law. That's why the published decisions of both courts have statewide precedential effect. Thus, while most of the cases the court of appeals handles fall in the category of error correction, and most of our cases involve issues of statewide importance, this fact does not implicate the power of a court to overrule itself. The *Cook* court's reliance on the different roles between the court of appeals and this court does not provide a sound basis for its conclusions.

---

[6] *See, e.g., State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), *overruled by State v. Johnson*, 2023 WI 39, ¶1, 407 Wis. 2d 195, 990 N.W.2d 174; *State v. Denny*, 120 Wis. 2d 614, 624, 357 N.W.2d 12 (Ct. App. 1984).

¶54 The primary reasoning in *Cook* concerns the second ground: that the court of appeals is, per the Wisconsin Constitution, a unified court. WIS. CONST. ART. VII, § 2; *Cook*, 208 Wis. 2d at 189. *Cook* took this to mean that the court of appeals must speak with a unified voice. And by disagreeing with a previous published court of appeals decision, that voice would no longer be unified; it would be fractured. But being a unified court does not say anything about whether a court can disagree with itself. The Wisconsin Supreme Court is no less "unified" in a constitutional sense—as we also are required to be—when we overrule our own prior decisions. *See* WIS. CONST. ART. VII, § 2. Even the various federal circuits who hear cases in smaller panels, like the Seventh Circuit Court of Appeals, have guidelines for how and when they can overrule their previous opinions. This does not make these courts any less unified.

¶55 I am not suggesting the approach taken in *Cook* is without virtue. Perhaps it has increased predictability and discouraged relitigating the same issues over and over. To that extent, I have no objection to its mandates as a reasonable exercise of this court's superintending and administrative authority. WIS. CONST. ART. VII, § 3. But at the very least, *Cook*'s approach is not commanded by the Wisconsin Constitution. There are good reasons to think alternative approaches are worth consideration.

¶56 Among them, this court has at times been unable to address questions with a controlling majority opinion, a trend that has grown in recent years.[7] In such situations, the court of appeals may be in the best position to provide clarity when we are unable to do so. Yet the strictures announced in *Cook* have sometimes stood in the way.[8] I see no reason, for

---

[7] Data compiled by Marquette University Professor Alan Ball demonstrates this. For the 19 court terms from 1996–97 through 2014–15, the court never had more than 7 percent of its cases result in a fractured decision—where the court's decision failed to garner a four-justice majority. Contrast that with the eight terms from 2015–16 through 2022–23, where more than 11 percent of our cases resulted in a fractured decision in five separate terms. *See* https://scowstats.com/2023/07/18/the-2022-23-term-some-more-impressions.

[8] For example, it took years for there to be clarity regarding the constitutionality of the incapacitated driver's implied consent in WIS. STAT. § 343.305 (2017–18). We ultimately settled the matter in *State v. Prado*, 2021 WI 64, 397 Wis. 2d 719, 960 N.W.2d 869, but not before multiple certifications,

example, why something like *en banc* review could not work in such situations.

¶57    In addition, as I noted in *Wisconsin Justice Initiative, Inc. v. WEC*, *Cook* has been extended to prohibit the court of appeals from recognizing dicta in its own or in our cases. 2023 WI 38, ¶¶143–44, 407 Wis. 2d 87, 990 N.W.2d 122 (Hagedorn, J., concurring). This court has therefore used *Cook* to clip the wings of the court of appeals and distort the judicial role.

¶58    Finally, *Cook*'s generalizations regarding the role of the court of appeals vis-à-vis this court has had an unfortunate effect. This court has, at times, minimized the important role the court of appeals can and should play in the development of Wisconsin law. For example, we have encouraged the court of appeals to certify questions of first impression rather than decide them, which can deprive us of the thoughtful input of our judicial colleagues. The constitution does not say that this court, and only this court, should address important legal questions. As I have expressed many times, allowing cases to work their way through the court of appeals is, absent unusual circumstances, the best way to ensure novel and important legal questions are thoroughly vetted.[9] When we silence the

---

contradictory court of appeals decisions, and split opinions by this court left the law in limbo for north of five years. *See generally Prado,* 397 Wis. 2d 719, ¶¶27–35.

[9] For example, in dissent to the court's order granting bypass in *Evers v. Marklein*, No. 2023AP2020-OA, unpublished order, at 4–5 (Feb. 2, 2024), I wrote:

> Judicial humility recognizes that this court is given a modest role in our constitutional order, and that our court's inherent limitations counsel caution when exercising our immense power. We must remember that we are designed to be the court of last resort, not the court of first resort. Rather, even when the issues are ones we are likely to consider in the end, the law is almost always better served by subjecting claims to the crucible of the multi-tiered adversarial process
>
>  . . .
>
> In addition, we benefit from the work of our colleagues in the circuit court and court of appeals. In my experience, especially in novel areas, they have something to teach us and the parties. Thoughtful lower court decisions usually improve the clarity of our

voice of our colleagues on the court of appeals, we hurt our own ability to carry out our role, and circumscribe the important contributions the court of appeals can likewise make to the law.

¶59     In the end, while the rules *Cook* establishes may be a permissible and reasonable exercise of our constitutional authority, it is not a decision commanded by the constitution itself. Over the years, it has had the regrettable effect of expanding the power of this court, and minimizing that of the court of appeals. I encourage my colleagues in the bench and bar to consider whether alternatives might better serve the people of Wisconsin.

---

work by framing the arguments and telling the parties what worked and what didn't.

REBECCA GRASSL BRADLEY, J., with whom ANNETTE KINGSLAND ZIEGLER, C.J., joins, dissenting.[1]

¶60    The parties presented two issues to this court: Whether the court of appeals violated *Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997), by contradicting its own precedent and whether Notice of Voting Eligibility forms ("NVE forms")—used to notify election officials that a court has deemed an individual incompetent to vote—are "pertinent to the finding of incompetency" under WIS. STAT. § 54.75 and thereby statutorily exempt from Wisconsin's public records laws. One of those issues presents an opportunity for this court to analyze and resolve weighty matters of privacy, open access to public information, and election integrity. The other allows us to wag a finger in admonishment at the court below. Although both parties urged the court to resolve the substantive issue, the majority dodges it and chooses to scold the court of appeals instead. The majority could have summarily reversed in a per curiam opinion but instead forced the parties to bear the cost of fully litigating the case before us. Principles of judicial economy and fundamental fairness demand we decide the substantive issue instead of skirting it on a technicality.

¶61    Judicial economy is a prudential consideration that promotes the effective use of judicial resources to avoid duplicative or unnecessary litigation and fulfills this court's duty to clarify the law. Even if the resolution of one issue disposes of a case, "to further judicial economy and guide trial courts and litigants, we may consider additional issues which have been fully briefed and are likely to recur . . . in the interest of conserving judicial resources and clarifying an important point of law." *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 640 n.7, 586 N.W.2d 863 (1998). This principle also embodies a concern for the resources litigants

---

[1] Oddly, the majority attempts to mischaracterize this dissent, saying, "[t]he dissent does not dispute that District II should be reversed for violating *Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997)." *See* majority op., ¶3 n.4. As may be obvious to most readers, the very purpose of a dissent is to convey an opinion of disagreement with the majority. Each of the four paragraphs comprising this dissent explain why the court should have resolved the substantive issue in this case. Perhaps the court would have reversed the court of appeals on the merits, but it may have affirmed it. We will never know. This dissent does not take a position on the merits because the majority punted on the principal issue presented.

must spend to resolve their disputes. *See Paul M.J. v. Dorene A.G.*, 181 Wis. 2d 304, 313, 510 N.W.2d 775 (Ct. App. 1993). Nothing compels this court to disregard these considerations and favor *Cook* instead. When previously confronted with conflicting court of appeals precedent, this court has chosen to decide the merits of the case while also reminding the court of appeals of *Cook*'s edict. *See, e.g., Marks v. Houston Cas. Co.*, 2016 WI 53, ¶¶79–80, 369 Wis. 2d 547, 881 N.W.2d 309.

¶62     The majority claims *Cook* commands reversal because actually deciding this case would somehow "thwart the 'principles of predictability, certainty and finality relied upon by litigants, counsel and the circuit courts.'" Majority op., ¶40 (quoting *Cook*, 28 Wis. 2d at 189). While those are indeed important principles, a new majority of this court did not hesitate to thwart them repeatedly last term. S*ee, e.g., Priorities USA v. WEC*, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.2d 429 (overruling *Teigen v. WEC*, 2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519); *Waukesha County v. M.A.C.*, 2024 WI 30, 412 Wis. 2d 462, 8 N.W.2d 365 (overruling *Waukesha County v. S.L.L.*, 2019 WI 66, 387 Wis. 2d 333, 929 N.W.2d 140); *Clarke v. WEC*, 2023 WI 79, 410 Wis. 2d 1, 998 N.W.2d 370 (overruling *Johnson v. WEC*, 2021 WI 87, 399 Wis. 2d 623, 967 N.W.2d 469). Setting aside the new majority's newfound regard for the principles of predictability, certainty, and finality, none of them preclude us from deciding the merits of this case.

¶63     A reversal premised on *Cook*, if warranted, should have been done summarily and promptly after the petition for certiorari was filed. Instead, by order of this court, both parties filed a complete set of briefs fully addressing the merits of the substantive issue in this case. The court accepted amicus briefs from three separate non-parties, each of whom explored various substantive legal issues. At oral argument, both parties agreed a decision on the merits was appropriate notwithstanding *Cook*. Nevertheless—after ordering both parties to expend considerable time and resources and bear the substantial costs of appellate litigation—the majority deprives not only the parties but the people of Wisconsin of a decision on the merits. Perhaps the majority agrees with District IV and disagrees with District II. Then say so. By dodging the core issue, the majority not only burdens the litigants with its own inefficiency, it also leaves unresolved issues of great importance to voters, election officials, and people from whom courts have removed the right to vote due to incompetency. Because the time for resolving this matter under *Cook* has long since passed, I respectfully dissent.