COURT OF APPEALS
DECISION
DATED AND FILED

March 19, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP36**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2022CV443**

**IN COURT OF APPEALS
DISTRICT II**

WISCONSIN VOTER ALLIANCE AND RON HEUER,

    PETITIONERS-APPELLANTS,

 V.

KRISTINA SECORD,

    RESPONDENT-RESPONDENT-PETITIONER.

 

       APPEAL from an order of the circuit court for Walworth County: DAVID W. PAULSON, Judge. *Affirmed*.

       Before Neubauer, Grogan and Lazar, JJ.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Wisconsin Voter Alliance and Ron Heuer (collectively referred to as WVA) appeal the dismissal of their petition for a writ of mandamus directed to Kristina Secord, the Walworth County Register in Probate, seeking to obtain Notices of Voter Eligibility containing information that is statutorily required to be communicated and widely disseminated to local officials or agencies throughout the State. *See* WIS. STAT. § 54.25(2)(c)1.g. (2023-24).[1] Pursuant to direction of the Wisconsin Court System (Court System) by its Director of State Courts, that statutory mandate is accomplished by sending all the information to the Wisconsin Elections Commission (WEC) for compilation and then WEC provides the information to the local election officials or agencies. Secord contends that, because the documents sought are confidential and not subject to public disclosure and/or because WVA has not demonstrated any need for the information, the circuit court did not err when it protected the privacy and sensitive information of individuals declared incompetent and that it appropriately exercised its discretion by dismissing WVA's petition.

¶2 WVA's arguments raise two issues: (1) is the ineligibility voting determination "pertinent to the finding of incompetency," and, if so, has WVA demonstrated "a need for the information" sufficient to warrant release of the documents and/or information even if it is "pertinent to the finding of incompetency"; and (2) is the Notice sent to election officials with the court's determination that a person is not competent to register to vote or to vote subject to disclosure under the Public Records Law.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

¶3      WVA has filed multiple requests to other Wisconsin county clerks of court and has filed other petitions for writ of mandamus. At least one other circuit court case has been appealed. Another district of the court of appeals has issued an opinion that addresses these issues, *see Wisconsin Voter Alliance v. Reynolds*, 2023 WI App 66, ¶¶20-34, 410 Wis. 2d 335, 1 N.W.3d 748, and as a unitary court, we are bound by that opinion's decision[2] to the extent it is not distinguishable, *see State v. Olson*, 2019 WI App 61, ¶¶15-19, 389 Wis. 2d 257, 936 N.W.2d 178. Although we disagree with the *Reynolds* court's conclusion on the first issue, we are bound by *Reynolds*. Absent the *Reynolds* decision, we would have issued an opinion agreeing with WVA on the first issue and that analysis is set forth in the attached concurrence. Because we are bound by *Reynolds*, we affirm.

## BACKGROUND

¶4      WVA sent an official request for public records to Secord on June 28, 2022, after a previous request and some correspondence between the parties. WVA sought information about wards under guardianship in Walworth County, specifically the names, addresses, birth dates, and "a copy of all wards under guardianship in [the] county." On July 26, 2022, WVA clarified that it was seeking

---

[2] This practice is more fully explained in *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 247 (1997) as follows:

> If the court of appeals is to be a unitary court, it must speak with a unified voice. If the constitution and statutes were interpreted to allow it to overrule, modify or withdraw language from its prior published decisions, its unified voice would become fractured, threatening the principles of predictability, certainty and finality relied upon by litigants, counsel and the circuit courts. Further, with the ability to rely on the rules set out in precedent thus undermined, aggrieved parties would be encouraged to litigate issues multiple times in the four districts.

completed GN-3180 forms from 2016 to the present and information regarding guardianship of wards without voting rights for the same time period.

¶5      The requested forms[3] are "Notices of Voting Eligibility," which indicate that a circuit court has found a person incompetent to exercise the right to vote or restored a person's right to register or vote.  The forms themselves identify the "Wisconsin Elections Commission" as the agency to which these notices should be sent.  *See also* WIS. STAT. § 54.25(2)(c)1.g. ("The determination of the court [that a person is ineligible to vote due to incompetency] shall be communicated in writing by the clerk of court to the election official or agency charged … with the responsibility for determining challenges to registration and voting ….").[4]  According to WEC, if and when it receives such a notice (and when the notice includes sufficient information to identify a specific voter), it adds the person to a list of disqualified voters that it publishes to local clerks, who perform inactivation

---

[3] The Notice of Voting Eligibility (Form No. GN-3180) (as well as the Determination and Order on Petition for Guardianship Due to Incompetency (Form No. GN-3170), the underlying court order that finds a person incompetent) are templates created by the Consolidated Court Administration Programs (CCAP), which provides computer automation to the Wisconsin court system.  Wisconsin Court System, Administrative Structure of the Courts (Nov. 2022), https://www.wicourts.gov/courts/resources/docs/structure.pdf.

[4] The statute directs clerks of court to disseminate the forms to the appropriate county and municipal clerks or officials throughout the entire state and the Wisconsin Court System has put in place a procedure to better coordinate the fulfillment in accordance with the statute.  There are 72 counties, 1,245 towns, 190 cities and 415 villages (a total of 1,850 municipalities not including counties).  *See* 2023-24 Wisconsin Blue Book, Local Governments in Wisconsin, at 1, 2 and 4. (https://docs.legis.wisconsin.gov/misc/lrb/blue_book/2023_2024/090_local_government_in_wisconsin.pdf).  By requiring that the forms be sent to WEC (as is noted on the very face of the form) and directing that WEC provide that information to the designated statutory recipients, the Wisconsin Court System is complying with the statute.  This procedure is further evidence that the information on the Notice of Voting Eligibility forms is not inherently confidential due to the legislature's intent that such information could be received by any of over 2,000 county and municipal clerks, and their employees and staff.

of voter registrations for such persons. That inactivation—or lack thereof—is subject to public challenge. *See* WIS. STAT. § 6.48(3).

¶6 WEC also administers a public database called WisVote that includes information about all voters in Wisconsin. This information, available to any member of the public pursuant to Wisconsin's Public Records Law, WIS. STAT. §§ 19.31-.37, includes each voter's name, address, voter status, and "Voter Status Reason." Sometime in 2022, WEC changed the "Voter Status Reason" for a voter who had voting rights revoked due to a finding of incompetency from "incompetent" to "administrative action."[5]

¶7 WVA's stated goals are "to improve the government's accuracy in the WisVote database so that the court orders restricting the voting rights of the wards are honored" and "to protect wards under 'no vote' guardianship orders from abuse." On the same day it made its official request for records to Secord, it filed a petition for mandamus in Walworth County Circuit Court seeking a writ directing Secord to produce the requested documents.[6] WVA asserted that the requested information is "already intended to be publicly available" and that to the extent WIS. STAT. § 54.75 applied, its request fell under the exception to the confidentiality requirement therein. This statute provides:

> All court records *pertinent to the finding of incompetency* are closed but *subject to access* as provided in [WIS. STAT. §] 51.30 or 55.22 or *under an order of a court* under this chapter. The fact that an individual has been found incompetent and the name of and contact information for the guardian is accessible to any person who demonstrates to the custodian of the records a need for that information.

---

[5] It is unclear why the WEC made the change in terminology.

[6] As noted above, this type of request was also filed in other counties, and WVA has filed other petitions for writ of mandamus where the requests were denied.

§ 54.75 (emphasis added).

¶8 After a hearing, the circuit court granted Secord's motion to dismiss, finding that WVA had no "clear legal right to access guardianship information," "the confidentiality of [WIS. STAT. §] 54.75 extends to 'All court records' including GN-3180" and "the **completed** form GN-3180 is a confidential record and not a public document." WVA appeals, conceding it is not entitled to actual guardianship court orders and seeking reversal only with respect to "redacted Notices [with] sufficient information … to identify the person with publicly available WisVote data on that same person."

### DISCUSSION

¶9 On December 27, 2023, this court issued an opinion in this appeal in which the majority reversed on the basis that WVA had met all of the prerequisites to support its petition for a writ of mandamus because it had not only demonstrated a need for the voter ineligibility determinations, but it had also demonstrated that it was entitled to the Notices (in full or redacted form) pursuant to the Public Records Law. *Wisconsin Voter Alliance v. Secord*, No. 2023AP36, unpublished slip op. ¶4 (WI App Dec. 27, 2023). Our supreme court reversed our decision in *Wisconsin Voter Alliance v. Secord*, 2025 WI 2, 414 Wis. 2d 348, 15 N.W.3d 872. The supreme court found the efforts to distinguish *Reynolds* unpersuasive and declared that "[o]n the facts and the dispositive legal issue, the two appeals are virtually indistinguishable." *Id.*, ¶31. It remanded the matter to us. *Id.*, ¶40.

¶10 Based upon the instructions from our state supreme court, we must affirm as we are bound by *Reynolds*, but we vehemently stand by our belief that the prior case was wrongfully decided. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

No.    2023AP36(C)

¶11    LAZAR, J. (*concurring*).   Because we disagree with the analysis in *Wisconsin Voter Alliance v. Reynolds*, 2023 WI App 66, ¶¶20-34, 410 Wis. 2d 335, 1 N.W.3d 748, with respect to the definition of the phrase "pertinent to the finding of incompetency," we submit this concurrence.   We conclude that the voter ineligibility determination is not pertinent to the finding of incompetency; it is a consequence of such a finding.   Moreover, it is a determination that the legislature has independently designated as nonconfidential and subject to public disclosure via communication to local officials or agencies (as directed to do so by the Wisconsin Court System (Court System) through the Wisconsin Election Commission (WEC)), to WEC's public website, and to the appropriate voting precincts in the state to allow electors to challenge voter eligibility.   In other words, this information is publicly available.

**I.    The Notice of Voting Eligibility is not "pertinent to the finding of incompetency."**

¶12    The circuit court glosses over the key issue in this appeal:   Is the Notice of Voting Eligibility (or any equivalent communication to the local officials or agencies through WEC, as directed by the Court System) "pertinent to the finding of incompetency" of the ward identified in that communication?   Instead, it holds— with no explanation or articulation of what "pertinent to the finding of incompetency" means—that the Notice Form is "generated as a part of the Order at a Guardianship hearing and is a court record pertinent to the finding of incompetency."   It further states that the Form "is a written memorialization of the court decision as to voter competency."   These holdings require examination.

## A. The statutory interpretation of "pertinent" in context

¶13　"[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***State ex rel Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). The court will read statutory language to give reasonable effect to every word to avoid surplusage. ***Id.*** Here, it is not just a question of what "pertinent" means, but rather how the entire phrase should be defined.

¶14　Before ***Reynolds***, no Wisconsin cases explicitly defined what "pertinent" means. A travel down the centuries, however, sheds significant light not only on a definition of "pertinent" but how the phrase "pertinent to the finding of incompetency" should be applied in context. A 1906 defamation case regarding comments made to a grand jury, ***Schultz v. Strauss***, 127 Wis. 325, 329, 106 N.W. 1066 (1906), involved the question of whether words were "spoken in the course of judicial proceedings and were they pertinent and related to the subject of inquiry?" Our supreme court held that "the alleged defamatory matter was applicable and pertinent to the subject under consideration by the grand jury, and that it was communicated to them in the course of a judicial proceeding." ***Id.*** The ***Schultz*** case is instructive. The comments were pertinent to the grand jury's deliberation as to whether to issue a charge just as the WIS. STAT. ch. 54 petition, reports, and evidence are pertinent to the finding of incompetency, and for that reason, they, like the grand jury statements, are privileged or confidential. The determination of the grand jury—just as the voting eligibility determination in this appeal—is, however, not pertinent to the grand jury proceeding and is not confidential. Both the grand jury

charge and the voter eligibility communications are expressly designed to be made public. Neither are "pertinent to the finding" of the respective deliberative body.

¶15    Next, in ***Bussewitz v. Wisconsin Teachers' Ass'n***, 188 Wis. 121, 128, 205 N.W. 808 (1925), again tethering "pertinent" to what takes place in court on the record, the court looked back even further to a decision from 1841 to find that comments made in court were not subject to defamation charges, and quoted from that decision:

> The question, therefore, in such cases is not whether the words spoken are true, not whether they are actionable in themselves, but whether they were spoken in the course of judicial proceedings, and whether they were relevant and pertinent to the cause or subject of inquiry. And in determining what is pertinent, much latitude must be allowed to the judgment and discretion of those who are intrusted with the conduct of a cause in court.

(quoting ***Hoar v. Wood***, 44 Mass. 193 (1841)).

¶16    The ***Bussewitz*** court's favorable citation to the quote from ***Hoar*** evidences a decision to limit "pertinent" to those comments, spoken in the judicial proceeding, that relate to the "cause or subject of inquiry." There was no effort to expand "pertinent" to what occurs *after* a judicial proceeding has concluded with a final order by the court.

¶17    A relatively recent Wisconsin case further addresses pertinent statements while discussing privileges and/or immunity for statements or actions made in the course of a judicial proceeding. In ***Snow v. Koeppl***, 159 Wis. 2d 77, 81, 464 N.W.2d 215 (Ct. App. 1990), when the court held that a court-ordered psychological evaluation for a family matter was privileged and its author was insulated from liability for breach of confidentiality and invasions of privacy, it declared that "[t]he determination whether the statements are pertinent and relevant

to the issues is a question of law for the court [to review] and not a fact issue for the jury." Here again, the **Snow** court (albeit combining pertinent and relevant) links the word "to the issues," not to the consequences of a court order. **Id.**

¶18 This is further substantiated by the fact that the legislature has declared that an "'[i]ndividual found incompetent' means an individual who has *been adjudicated* by a court as meeting the requirements of [WIS. STAT. §] 54.10(3)." WIS. STAT. § 54.01(16) (emphasis added).[1] The inclusion of an adjudication or a finding adds context to the word "pertinent." It emphasizes that, per **Kalal**, the word cannot be considered in isolation. *See* **Kalal**, 271 Wis. 2d 633, ¶46. Additional cases add further illumination to the inquiry.

¶19 There are cases where "pertinent" is considered synonymous with "relevant" in the context of whether a character trait may be admitted into evidence under WIS. STAT. § 904.04(1)(a). In **Milenkovic v. State**, 86 Wis. 2d 272, 281, 272 N.W.2d 320 (Ct. App. 1978), the court differentiated between pertinent and relevant, but did not define pertinent other than to note that prior sexual activity of a rape victim "is not a pertinent trait of character, nor is it relevant to consent in a rape case." And, later, in **State v. Davis**, 2002 WI 75, ¶16, 254 Wis. 2d 1, 645

---

[1] WISCONSIN STAT. § 54.10(3)(a) provides, in relevant part:

> A court may appoint a guardian of the person or a guardian of the estate, or both, for an individual based on a finding that the individual is incompetent only if the court finds by clear and convincing evidence that all of the following are true:
>
> ….
>
> 2. For purposes of appointment of a guardian of the person, because of an impairment, the individual is unable effectively to receive and evaluate information or to make or communicate decisions to such an extent that the individual is unable to meet the essential requirements for his or her physical health and safety.

N.W.2d 913, our supreme court explained that "'[p]ertinent' refers to the relevance of the traits." (Citing 7 Daniel Blinka, Wisconsin Practice: Wisconsin Evidence § 404.4, at 133 (2d ed. 2001)).

¶20 Neither of these cases provide much insight, nor do they show a tendency to expand the definition of pertinent beyond a reference to a determination regarding character traits. Taken altogether, these cases support a conclusion that "pertinent to a finding," "pertinent to a judicial proceeding" or "pertinent to a specific character trait" is limited by the remainder of the phrase in which pertinent is embedded.

¶21 A perusal of dictionary definitions is, likewise, not dispositive, but is somewhat instructive. Merriam-Webster defines "pertinent" as "having a clear decisive relevance *to the matter in hand*." *Pertinent*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/pertinent (last visited Oct. 31, 2023) (emphasis added). Black's Law Dictionary defines it as "pertaining *to the issue at hand*; relevant." *Pertinent*, BLACK'S LAW DICTIONARY (8th ed. 2004) (emphasis added). Again, this supports a conclusion that pertinent *to the finding* of incompetency contemplates information, data, and testimony that is referenced in the judicial proceedings and leads up to the court-ordered adjudication.

¶22 The actual order form finding incompetency (State Form No. GN-3170) is also on point. It specifically states, at the start, that a petition was filed, a hearing was held, and that the circuit court, "[a]fter consideration of the reports and other documents on file, all factors required by the statutes, and such additional information presented" finds and grants or denies the petition. The order concludes with the mandatory language that it "**IS A FINAL ORDER FOR PURPOSE OF APPEAL IF SIGNED BY A CIRCUIT COURT JUDGE**." *See*

WIS. STAT. § 808.03(1); *Wambolt v. West Bend Mut. Ins. Co.*, 2007 WI 35, ¶4, 299 Wis. 2d 723, 728 N.W.2d 670.

¶23 When appointing a guardian, the circuit court may order specific rights that are to be removed in full from the subject individual. The court can check a box to order that "[t]he individual has the incapacity to exercise the right to ... (3) register to vote or to vote in an election because the individual is unable to understand the objective of the elective process." This is in a list of rights that "**[i]f removed, ... may not be exercised by any person.**"[2] Therefore, no one—not even the guardian of the individual ward—may exercise the right to vote if that right has been "removed" due to a finding of incompetency.

¶24 After a final order "finding of incompetency" is made, the court then completes a Notice of Voting Eligibility and communicates that publicly to the local officials or agencies (as directed to do so by the Court System to WEC). That Notice has references to [WIS. STAT. §] ch. 54, thereby publicly putting WEC, the viewers of WisVote, and all voting precincts on notice that an individual is, by "administrative action," no longer able to vote in an election. Even though the Notice is also contained in the electronic court file, that is not dispositive because public documents can also be filed in confidential court files without losing their public designation. The Notice is only completed and disseminated *after* a finding of incompetency.

¶25 Albeit in reference to the predecessor statute, the Wisconsin Attorney General has opined (interpreting WIS. STAT. § 880.33(6)) that "only the file containing the documents themselves are 'records pertinent to the finding of

---

[2] Seven other rights may "be removed in full or exercised by individual only with consent of guardian of person."

incompetency.'  Only the documents themselves provide information which the court uses to find an individual is 'substantially incapable of managing his property or caring for himself.'"  67 Wis. Op. Atty. Gen. 130, 131 (1978).[3]  Once again, an authority[4] defines documents and information that lead up to and are utilized in deliberations as things that are pertinent to a specific finding.

¶26    Thus, all of the legal authorities, all of the cases, and all of the dictionary definitions lead to the conclusion that there is a clear distinction between what is pertinent and what is pertinent to a specific finding.  While "pertinent" could be considered similar to relevant, it could—arguably—mean that *anything* related to a judicial proceeding, whether it be before or after a court finding or determination, is "pertinent."  That expansive use of the word is circumscribed with the addition of the rest of the limiting phrase:  "to the finding of incompetency."  The inclusion of those words must mean something; they cannot be surplusage.

### B. The Notice of Voting Eligibility is a consequence, not a finding.

¶27    The circuit court, understandably and reasonably concerned over the privacy and dignity of individuals involved in guardianship proceedings and the possible release of sensitive information, failed to consider and differentiate the steps of the process "of finding incompetency" and it failed to align those steps with

---

[3]  The Attorney General Opinion continued, and noted that "[t]he index and docket are not pertinent to the court's consideration."  67 Wis. Op. Atty. Gen. 130, 131.  Attorney General Opinions are "only persuasive authority.  An opinion has considerable weight if the legislature later amends and revises a statute but makes no changes in response to the opinion." *State ex rel. North v. Goetz*, 116 Wis. 2d 239, 244-45, 342 N.W.2d 747 (Ct. App. 1983).  The statute referenced in the Attorney General Opinion (WIS. STAT. § 880.33(6)) was amended in 2005 (to WIS. STAT. § 54.75) but was not revised to alter the opinion set forth in 1978.  *See* 2005 WIS. ACT 387, § 471 (renumbering § 880.33(6) to WIS. STAT. § 54.75).

[4]  The *Reynolds* court also references this Attorney General Opinion but asserts that because the Notice is a part of the court file, WVA's arguments are undercut.  410 Wis. 2d 335, ¶30 n.8.  We disagree as already detailed herein.

the clear legislative direction with respect to elections and elector qualifications. Each step of the process must be carefully broken down and analyzed.

¶28    First, we look at what the legislature identifies as being confidential and what it requires to be made publicly available.  As explained above, it is the procedure resulting in a "finding of incompetency" that is initially cloaked from public access.  The legislature itemizes what documents, proof, and procedural steps are inherently pertinent to that finding of incompetency:  (1) the petition that initiates the guardianship proceeding, WIS. STAT. § 54.34(1); (2) the report of a guardian ad litem, if one was appointed, WIS. STAT. § 54.10(2); (3) the written statement by a licensed physician or licensed psychologist, or both, with the experts' "professional opinion regarding the presence and likely duration of any medical or other condition causing the proposed ward to have incapacity," WIS. STAT. § 54.36(1); (4) the jury or court hearing (as memorialized in a transcript or court minutes) at which the ward may challenge a finding of incompetency, WIS. STAT. § 54.44; and (5) the final order detailing the finding of incompetency and the legal consequences of such a determination, WIS. STAT. § 54.46.

¶29    The finding by the circuit court that is memorialized in that final order (Form GN-3170) is filed in the guardianship record.  The order is detailed and contains numerous statements about the incompetency of the ward as well as various rights that the ward may—or may no longer—be eligible to exercise.  *See* WIS. STAT. § 54.25(2)(c).  That document is confidential—and rightly so due to its length

and thorough detailed description[5] of the ward's condition. The execution of that order is the pure essence of the circuit court's finding of incompetency.

¶30    At that point in time, the ward has been found to be incompetent. All of the records and forms leading up to that finding are "pertinent" to the finding of incompetency. The next steps taken by the circuit court are consequences of such a finding. The first of these steps is the legislature's instruction that *only in those cases where the right to vote has been removed*, the circuit court must publicly acknowledge and communicate that voter ineligibility to the local officials or agencies (as directed to do so by the Court System through WEC) to preserve the sanctity of Wisconsinites' right to vote. WIS. STAT. § 54.25(2)(c)1.g.

¶31    In fact, these Notices can be utilized in nonguardianship instances where an individual is determined to be ineligible to vote.[6] The fact that the form can be used by a circuit court even when there is no guardianship case further bolsters the conclusion that the post-judicial-determination-of-voter-eligibility form is not pertinent to the finding of incompetency where it would be included in a confidential case file.

---

[5] The order allows a court to communicate the basis on which the individual was found to be incompetent: "a developmental disability," "degenerative brain disorder," "serious and persistent mental illness," or "other like incapacities." Certainly, that sensitive information is not only pertinent to the finding of incompetency, but it is information the legislature has rightly declared to be confidential.

[6] Pursuant to WIS. STAT. § 54.25(2)(c)1.g., "any elector of a municipality may petition the circuit court for a determination that an individual residing in the municipality is incapable of understanding the objective of the elective process and thereby ineligible to register to vote or to vote in an election." That determination, if made by a court, is likewise to be communicated to the local officials or agencies (as directed to do so by the Court System through WEC). *Id.*

**II.** **The *Reynolds* interpretation of "pertinent to the finding of incompetency" is incorrect.**

¶32    The *Reynolds* court concluded that the Notice of Voter Eligibility forms are "pertinent to the finding of incompetency" and are "therefore barred from disclosure under WIS. STAT. § 54.75." 410 Wis. 2d 335, ¶34. First, the *Reynolds* court disagrees with WVA's argument (in that appeal) that the Notices are created after the proceedings and thus "could not have played a role in the court's finding" of incompetency. *Id.*, ¶25. The *Reynolds* court explained that WVA appeared to be trying to write words into the statute. *Id.*, ¶26.

¶33    It is well recognized that courts may not add language to a statute. This canon of construction was nicely summarized by our supreme court in *State v. Neill*, 2020 WI 15, ¶23, 390 Wis. 2d 248, 938 N.W.2d 521, as follows:

> "One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." *Fond Du Lac C[n]ty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989) (citation omitted); *see also Dawson v. Town of Jackson*, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write." (citation omitted)); *State v. Wiedmeyer*, 2016 WI App 46, ¶13, 370 Wis. 2d 187, 881 N.W.2d 805 ("It is not up to the courts to rewrite the plain words of statutes[.]"). "[R]ather, we interpret the words the legislature actually enacted into law." *State v. Fitzgerald*, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165.

(Alterations in original.)

¶34    While we agree that "[m]any court records that are pertinent to a [circuit] court's decision—such as court forms, written opinions, and transcripts of proceedings in which decisions are made—are created after the court has made a decision," *Reynolds*, 410 Wis. 2d 335, ¶26, that—in and of itself—does not mean that every record created after such decisions necessarily *is* pertinent to a court's

findings. As explained above, there is a clear distinction between a finding and a consequence.

¶35    Next, the *Reynolds* opinion, like the circuit court in this appeal, considered the term "pertinent" and its dictionary definitions, but it did not delve into the word in the context of the entire phrase in which it is used. *Reynolds* looked to two dictionary definitions[7] of "pertinent" and, again like the circuit court in this appeal, linked "pertinent" to "relevant," concluding:

> Under any of these definitions, the requested [Notice of Voter Eligibility] forms are clearly "pertinent to the finding of incompetency." The requested forms "hav[e] some connection with" and "relat[e] to," the finding of incompetency because they are created in the context of proceedings in which incompetency is determined for purposes of establishing guardianship. *See* WIS. STAT. § 54.25(2)(c)1.g. ("The court may, as part of a proceeding under [WIS. STAT. §] 54.44 in which an individual is found incompetent and a guardian is appointed, declare that the individual has incapacity to exercise ... [t]he right register to vote or to vote in an election.").

*Reynolds*, 410 Wis. 2d 335, ¶28 (alterations in original).

---

[7] The *Reynolds* court elucidated as follows:

> [WVA] also offers two dictionary definitions of "pertinent": first, "[h]aving some connection with the matter at hand; relevant; to the point," https://www.collinsdictionary.com/us/dictionary/english/pertinent (last visited Nov. 6, 2023); and second, "[p]ertaining to the issue at hand; relevant," BLACK'S LAW DICTIONARY 1181 (8th ed. 2004). *See* *Spiegelberg v. State*, 2006 WI 75, ¶19, 291 Wis. 2d 601, 717 N.W.2d 641 (in determining ordinary meaning of words that are undefined by statute, "[w]e may consult a dictionary to aid in statutory construction"). Although we do not perceive any consequential difference in these definitions, we note that a more recent edition of [WVA]'s second source defines "pertinent" as "[o]f, relating to, or involving the particular issue at hand; relevant." *Pertinent*, BLACK'S LAW DICTIONARY (11th ed. 2019).

*Reynolds*, 410 Wis. 2d 335, ¶27 (alterations in original).

¶36 This conclusion, based solely on the definition of pertinent, fails to consider how "pertinent" applies to the remainder of the phrase: "to the finding of incompetency." As detailed above, this court has conducted that analysis and based upon the holdings in *Hoar*, *Schultz*, *Bussewitz*, and *Snow*, the word "pertinent" is circumscribed, and its potential expansive nature that is commonly linked to "relevant" is limited, when taken together with the remainder of the phrase in which it is used. The embedding of pertinent in the key phrase must—and does—mean something more than just "pertinent." *See Kalal*, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."). That something more is the legislature's intent that a record that contains the voting ineligibility consequence of a limited number of circuit court findings of incompetency is created after such a finding. Not only that, but it is a consequence that statutorily *must be* publicly communicated to the local officials or agencies (as directed to do so by the Court System through WEC).

¶37 The circuit court was well-meaning in its effort to protect incompetent individuals, clearly "some of the most vulnerable citizens of Walworth County," and to avoid "opening the door for intrusion into other confidential information to satisfy [WVA's] objectives." We agree that the confidential, sensitive information of incompetent individuals must be protected (absent a court-found need for disclosure or determination that the Public Records Law otherwise requires disclosure), but conclude nevertheless that the Notice of Voting Eligibility is *not*

pertinent to the finding of incompetency.  Accordingly, it[8] is subject to disclosure—in an appropriately redacted format.

¶38    I am authorized to state that Judge Shelley A. Grogan joins this concurrence.

---

[8] We are uncertain as to why Judge Neubauer contends this concurrence contains a "shift in focus"—whether it was subtle or mistaken—"from the [Notice of Voting Eligibility] forms themselves to items of information contained in them."  Neubauer, J., concurring, ¶42.  This concurrence starts, continues, and concludes its analysis with a decided and unaltered focus on the forms because WVA has sought the *forms* in order to compare them to the information published on WisVote or otherwise disclosed to election officials or the public.

No.   2023AP36(C)

¶39   NEUBAUER, J. (*concurring*).   I join the per curiam opinion insofar as it affirms the circuit court's dismissal of WVA's petition seeking a writ of mandamus in light of our supreme court's decision in *Wisconsin Voter Alliance v. Secord*, 2025 WI 2, 414 Wis. 2d 348, 15 N.W.3d 872, and our decision in *Wisconsin Voter Alliance v. Reynolds*, 2023 WI App 66, 410 Wis. 2d 335, 1 N.W.3d 748.  The balance of this concurrence explains my disagreement with Judge Lazar's concurrence regarding the meaning of the phrase "pertinent to the finding of incompetency" in WIS. STAT. § 54.75 (2023-24).[1]

¶40   In my view, *Reynolds* sets forth a more persuasive analysis of this statutory language, in particular the meaning of the word "pertinent."  Thus, I agree with *Reynolds*' conclusion that the Notice of Voting Eligibility (NVE) forms are "pertinent to the finding of incompetency."  *See Reynolds*, 410 Wis. 2d 335, ¶28.  I address Judge Lazar's concurrence to highlight what are, in my view, three errors in its statutory analysis.

¶41   First, a significant factor that leads the concurrence to conclude that NVE forms are not pertinent to the finding of incompetency is the suggestion that transmission of the forms from the circuit court to WEC, and WEC's subsequent communication to local officials and agencies, has already made the forms publicly available.  Lazar, J., concurring, ¶11.  The per curiam incorrectly states that the dissemination of "the forms" to county and municipal clerks throughout the state is

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

statutorily mandated. Per Curiam, ¶5 n.4. The concurrence then asserts that "voter eligibility communications are expressly designed to be made public," Lazar, J., concurring, ¶14; that a circuit court, upon finding an individual incompetent, "completes a Notice of Voting Eligibility and communicates that publicly to the local officials and agencies (as directed to do so by the Court System to WEC), *id.*, ¶24; and that the form itself "put[s] WEC, the viewers of WisVote, and all voting precincts on notice that an individual is, by 'administrative action,' no longer able to vote in an election," *id.*

¶42 These arguments rest on a subtle (and mistaken) shift in focus from the NVE forms themselves to items of information contained in them. Though the forms are provided to WEC, nothing in the record suggests that the forms have been disclosed to the general public, either by the circuit court, the register in probate, WEC, or any other governmental actor. WEC has not published NVE forms it receives on the publicly-accessible database of voter information it administers or otherwise makes them available to the public.[2] That a voter's registration status as ineligible due to "administrative action" may be determined by typing the voter's name and address into the website's search function is a far cry from the concurrence's assertion that the NVE forms put visitors to the website on notice that a particular voter has been determined to be incompetent.

¶43 The concurrence's view also runs contrary to our conclusion in *Reynolds* that "the confidentiality of an NVE form contained in a circuit court file is not affected by WEC's treatment of a duplicate of the same form." 410 Wis. 2d

---

[2] Further to the non-public nature of the NVE forms, the sample form included in the appendix to WVA's petition contains a box for a WEC staffer to indicate the date the form is processed and the staff member who does so. The words "FOR OFFICIAL USE ONLY" appear across the top of the box.

335, ¶32. The concurrence loses sight of the fact that the request at issue here seeks to compel disclosure of the NVE forms contained in the guardianship files of the register of probate, not WEC.

¶44 Next, in construing the phrase "pertinent to the finding of incompetency" in WIS. STAT. § 54.75, the concurrence relies significantly on several defamation cases to support its conclusion that the statutory language only extends to "information, data, and testimony that is referenced in the judicial proceedings and leads up to the court-ordered adjudication." Lazar, J., concurring, ¶¶14-16, 21. Those defamation cases do not provide meaningful guidance in determining the scope of "pertinent" in § 54.75. In those cases, our supreme court considered whether the plaintiffs had stated viable defamation claims, which were premised on statements made in the course of judicial proceedings. *See Schultz v. Strauss*, 127 Wis. 325, 328-29, 106 N.W. 1066 (1906) (assessing viability of defamation claim premised on a statement made during grand jury proceeding); *Bussewitz v. Wisconsin Teachers' Ass'n*, 188 Wis. 121, 123-25, 205 N.W. 808 (1925) (examining defamation claim premised on a statement made in counterclaim). To assess the claims' viability, the court had to determine whether the statements at issue were "pertinent and related to the subject of inquiry" in the proceedings because if they were, they could not be the basis for a defamation claim. *See Schultz*, 127 Wis. at 328-29 ("It is well recognized by numerous adjudications 'that words spoken in the course of judicial proceedings, though they are such as impute crime to another, and therefore if spoken elsewhere, would import malice and be actionable in themselves, are not actionable if they are applicable and pertinent to the subject of inquiry.'" (citation omitted)).

¶45 The statements at issue in *Schultz* and *Bussewitz* were necessarily made in the course of judicial proceedings because the litigation privilege would not

have been relevant had they been made outside the proceedings or after they had concluded. Thus, these cases, and the others cited by the concurrence, specifically address the relevance of what takes place during a judicial proceeding—defamatory remarks or evidentiary determinations—and have nothing to do with whether an NVE form that is completed and sent to WEC after a finding of incompetency has been made is nonetheless "pertinent to" that finding. And, as *Reynolds* aptly points out, WVA's attempt (embraced by Judge Lazar's concurrence) to cabin "pertinent to the finding of incompetency" to the facts supporting the competency determination set forth during the proceeding, "transforms the language into something along the lines of 'pertinent to the facts supporting the finding of incompetency,'" which is not what WIS. STAT. § 54.75 says. *Reynolds*, 410 Wis. 2d 335, ¶30 n.8.

¶46     Finally, the concurrence faults *Reynolds* for not construing the term "pertinent" "in the context of the entire phrase in which it is used" in WIS. STAT. § 54.75—"pertinent to the finding of incompetency." Lazar, J., concurring, ¶35. That, in my opinion, ignores several key paragraphs in *Reynolds*. In that case, we consulted several dictionary definitions of the word "pertinent," and then considered those definitions with the rest of the statutory language. *Reynolds*, 410 Wis. 2d 335, ¶¶28-30. In paragraphs twenty-eight to thirty of *Reynolds*, we plugged the dictionary definitions of "pertinent" into the language of § 54.75 and explained why the NVE forms "'hav[e] some connection with' and 'relat[e] to,' the finding of incompetency." *Reynolds*, 410 Wis. 2d 335, ¶¶28-30 (citation omitted). That is so, *Reynolds* states, because the forms are "created in the context of proceedings in which incompetency is determined for purposes of establishing guardianship," *id.*, ¶28; "contain[] information drawn directly from the guardianship proceedings," *id.*, ¶29; and were "the standard means of making a statutorily required report of the

circuit court's determination regarding restrictions to an individual's voting rights as a result of the court's finding of incompetency in a guardianship proceeding," *id.*, ¶30. The analysis in these paragraphs is what the concurrence incorrectly claims *Reynolds* lacks.[3]

---

[3] Equally unavailing, after reviewing a handful of irrelevant cases, several ancient, Judge Lazar's concurrence declares that "all of the legal authorities, all of the cases, and all of the dictionary definitions" support its attempt to cabin "pertinent" to facts considered during a judicial proceeding. Lazar, J., concurring, ¶26. Again, WIS. STAT. § 54.75 does not limit its reach to facts supporting the finding of incompetency, or to findings of incompetency. The concurrence's analysis adds words and ignores the plain language of the statute: all records pertinent to the finding of incompetency are confidential.